IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA

       Plaintiff,

v.                   //   CIVIL ACTION NO. 1:08CV124
                             (Judge Keeley)

EXXONMOBIL CORPORATION,

       Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO INTERVENE OF CBS CORPORATION AND VERTELLUS SPECIALTIES INC. (DKT. NOS. 17 & 55)

Pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-75, the United States ("the government") filed this environmental cleanup cost recovery action against Exxonmobil Corporation ("Exxon") on June 10, 2008. At the time it filed this action, the government also lodged a consent decree with the Court that purported to resolve Exxon's liability as a potentially responsible party ("PRP") for cleanup operations at several adjacent industrial sites in Marion County, West Virginia. Following that, on July 10, 2008, the government moved for entry of the consent decree.

The Environmental Protection Agency ("EPA"), which has regulatory responsibility for the administration of CERCLA, has identified Vertellus Specialties Inc. ("Vertellus") and CBS Corporation ("CBS") as additional PRPs for these same sites. Based

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO INTERVENE
OF CBS CORPORATION AND VERTELLUS SPECIALTIES INC.**

on their status as PRPs, Vertellus and CBS seek leave to intervene
in this case to oppose entry of the government's proposed consent
decree with Exxon as both substantively and procedurally unfair.
They claim that the consent decree would relieve Exxon of its
liability for certain portions of the sites in question, while
unfairly exposing Vertellus and CBS to disproportionate liability
for the remainder of the cleanup costs, which the government
estimates could potentially exceed $24 million.

   The government opposes the motions to intervene and contends
that neither CBS nor Vertellus has a protectable interest in the
subject matter of this litigation. Additionally, it argues that
CBS's motion to intervene is untimely.

   The question presented by the motions is whether Vertellus and
CBS may intervene as of right under Fed.R.Civ.P. 24(a)(2) and
CERCLA, 42 U.S.C § 9613(i). For the reasons that follow, the Court
concludes that, as PRPs, both have significantly protectable
interests in the outcome of the present litigation that permit
intervention as a matter of right for the limited purpose of
challenging the consent decree. The Court therefore **GRANTS** the
motions to intervene subject to the limitations discussed below.

### MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO INTERVENE OF CBS CORPORATION AND VERTELLUS SPECIALTIES INC.

### I. Background

This litigation focuses on a body of water referred to by the parties alternatively as Sharon Steel Run or Unnamed Tributary #1 ("the Tributary"), and also the former industrial sites located on either side of the Tributary. On one side of the Tributary lies the Big John's Salvage Site ("BJS site"), where, between 1923 and 1973, Reilly Tar and Chemical Corporation ("Reilly"), a predecessor to Vertellus, operated a tar refinery plant acquired by Big John's Salvage, Inc. ("BJS") in 1973. BJS maintained a salvaging operation for metal, glass and oil on the site until 1997. As part of its operations, BJS obtained waste glass from Westinghouse Electric Corporation, a CBS predecessor, that may have contained mercury and other contaminants. On the other side of the Tributary lies the Fairmont Coke Works Site ("FCW site") where, from 1920 until 1997, Exxon's predecessor, Domestic Coke, owned and operated a coke production business at the FCW site that sent coal tar to Reilly for processing on the BJS site.

The government has identified Vertellus, CBS and Exxon as PRPs as to the BJS site. Under the consent decree, in exchange for a payment of $3 million, the government has agreed to relieve Exxon of any and all liability for pollution at the BJS site and in the

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO INTERVENE
OF CBS CORPORATION AND VERTELLUS SPECIALTIES INC.**

Tributary,[1] with the exception of waste materials still present in the adjacent Monongahela River. Additionally, and of crucial importance to Vertellus and CBS, the terms of the consent decree bar other PRPs from seeking contribution from Exxon.

Both CBS and Vertellus assert that the consent decree unreasonably underestimates Exxon's liability for the BJS site. They claim that, under CERCLA, Exxon may be responsible as an "arranger" for contamination of the BJS site,[2] and thus liable for a greater share of the pollution at that site than the parties currently contemplate under the terms of the proposed consent decree.

## II. Discussion

### A. CERCLA

CERCLA "imposes retroactive, strict, and joint and several liability upon a broad class of persons whom Congress has deemed 'responsible' for hazardous waste contamination." Christopher D.

---

[1] Although both the BJS and FCW sites contributed to the pollution in the Tributary, for administrative purposes the EPA considers the Tributary to be part of the BJS site.

[2] An arranger is liable for pollution not by virtue of its ownership of a site, but because it "arranged" for the disposal of materials that ultimately contributed to pollution at the site in question. 42 U.S.C. § 9607(a)(3).

4

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO INTERVENE
OF CBS CORPORATION AND VERTELLUS SPECIALTIES INC.**

Man, The Constitutional Rights of NonSettling Potentially Responsible Parties in the Allocation of CERCLA Liability, 27 Envtl. L. 375, 376 (1997)(citing 42 U.S.C. § 9607).

While CERCLA provides that a PRP has the right to pursue a claim for contribution against another person who is liable or potentially liable for pollution at a given site, 42 U.S.C. § 9613(f)(1), it also affords immunity from such claims to a PRP who settles with the EPA. 42 U.S.C § 9613(f)(2). While this latter provision creates added incentives for PRPs to settle with the EPA, it has led many non-settling PRPs to seek intervention under both Fed.R.Civ.P. 24(a)(2) and CERCLA, 42 U.S.C. § 9613(i). Man, supra, at 376. As have Vertellus and CBS in this case, these PRPs generally seek to halt the entry of a consent decree that extinguishes their contribution rights.

**B. Intervention as of Right**

Fed.R.Civ.P. 24(a)(2) provides:

> On timely motion, the court must permit anyone to intervene who: claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

## MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO INTERVENE OF CBS CORPORATION AND VERTELLUS SPECIALTIES INC.

CERCLA "provides for intervention in terms nearly identical to those of Fed.R.Civ.P. 24(a)(2);" thus, the test applied to motions to intervene is the same under either statute. <u>Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects</u>, 309 F.3d 1113 (9th Cir. 2002).[3] <u>See</u> <u>also</u> <u>United States v. Union Elec. Co.</u>, 64 F.3d 1152, 1156-57 (8th Cir. 1995); <u>United States v. Alcan Aluminum Inc.</u>, 25 F.3d 1174, 1181 (3d Cir. 1994); <u>United States of America v. Pitney Bowes, Inc.</u>, 25 F.3d 66, 70 (2d Cir. 1994); <u>Travelers Indem. Co. v. Dingwell</u>, 884 F.2d 629, 641 (1st Cir. 1989). Under CERCLA,

> [i]n any action commenced under this chapter . . . in a court of the United States, any person may intervene as a matter of right when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest, unless the President or the State shows that the person's interest is adequately represented by existing parties.

42 U.S.C. § 9613(i).

----

[3]The only exception is "that the burden to show that existing parties adequately represent the prospective intervenor's interests is allocated to the President or the State under [§ 9613(i)], whereas under Fed.R.Civ.P. 24(a)(2) the party seeking to intervene has the burden to show that no existing party adequately represents its interests." <u>Commercial Realty Projects</u>, 309 F.3d at 1119 (citing <u>Union Elec.</u>, 64 F.3d at 1156-57).

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO INTERVENE
OF CBS CORPORATION AND VERTELLUS SPECIALTIES INC.**

Under Fed.R.Civ.P. 24(a)(2), the Fourth Circuit has allowed a PRP to intervene as a matter of right whenever the PRP establishes that "(1) it has an interest in the subject matter of the action, (2) disposition of the action may practically impair or impede the movant's ability to protect that interest, and (3) that interest is not adequately represented by the existing parties." See, e.g., Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n., 646 F.2d 117, 120 (4th Cir. 1981)(citations omitted). Further, the motion to intervene must be timely. Gould v. Alleco, Inc., 883 F.2d 281, 286 (4th Cir. 1989)(citations omitted).

As a general matter, "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" Feller v. Brock, 802 F.2d 722, 729 (4th Cir. 1986) (quoting Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967)). With this direction in mind, as explained below, the Court concludes that both CBS and Vertellus have satisfied the requirements necessary to support their motions to intervene in this case.

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO INTERVENE
OF CBS CORPORATION AND VERTELLUS SPECIALTIES INC.**

## (1).  <u>Interest in the Subject Matter</u>

The government disputes whether the potential contribution rights of Vertellus and CBS are significantly protectable interests justifying their intervention in this case. The Fourth Circuit has not decided this question, and other federal courts that have addressed the issue have reached conflicting results. Because the test for intervention under Fed. R. Civ. P. 24(a) is the same in relevant part as under CERCLA, the Court will be guided by precedent regarding intervention under Rule 24(a), in addition to cases specifically addressing intervention under CERCLA.

## a. <u>Intervention Generally</u>

Generally, to intervene as a matter of right a party must have a "significantly protectable interest" in the outcome of the litigation. <u>Donaldson v. United States</u>, 400 U.S. 517, 531 (1971). Courts have also characterized this element as a "standing" requirement. <u>Gould</u>, 883 F.3d at 284. Both the Fourth Circuit and the Eighth Circuit have recognized that a significantly protectable interest includes a contingent interest. <u>Cf.</u> <u>Southern California Edison Co. v. Lynch</u>, 307 F.3d 794 (9th Cir. 2002)(A "'direct, non-contingent, substantial and legally protectable' interest [is]

required for intervention as a matter of right.")(quoting <u>Dilks v.</u>

<u>Aloha Airlines</u>, 642 F.2d 1155, 1157 (9th Cir. 1981)). For example,

a significantly protectable interest may include an interest

contingent upon the outcome of other pending litigation. <u>Teague v.</u>

<u>Bakker</u>, 931 F.2d 259, 261 (4th Cir. 1991). Similarly,

> [t]he rule does not require, after all, that
> [potential intervenors] demonstrate to a
> certainty that their interests *will* be
> impaired in the ongoing action. It requires
> only that they show that the disposition of
> the action 'may as a practical matter' impair
> their interests.

<u>Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist</u>, 738

F.2d 82, 84 (8th Cir. 1984)(emphasis in original)(citations

omitted).

In <u>Feller v. Brock</u>, 802 F.2d 722 (4th Cir. 1986), a group of

apple growers sued the United States Department of Labor ("DOL") to

force the issuance of temporary foreign worker certifications to

allow the growers to hire non-resident pickers at lower wages than

the DOL determined appropriate. Three groups of domestic apple

pickers sought to intervene, arguing that, if the permits were not

issued or were issued requiring the payment of a higher wage, the

compensation for their members would rise. Although the district

court denied intervention, the Fourth Circuit vacated that order,

noting that the pickers' interests were "substantially contingent

upon the availability of foreign workers," and that those interests were sufficient to support intervention as of right. Id. at 730.

More recently, in JLS, Inc. v. Pub. Serv. Comm'n of W. Va., 321 Fed.Appx. 286, 290 (4th Cir. 2009)(unpublished), the Fourth Circuit reversed a district court's denial of motions to intervene in a dispute between the West Virginia Public Service Commission ("PSC") and a company, JLS, that transported railroad workers. Even though JLS held a federal permit for its work, the PSC contended that the company was subject to state regulation.

After JLS filed suit in federal court, seeking a declaration that it was not subject to regulation by the PSC, several West Virginia taxi and transport companies sought to intervene in the case, arguing that they would be economically harmed by the competition were JLS allowed to operate outside the regulation of the PSC. The district court concluded that the interest of these companies was not sufficient to support intervention. The Fourth Circuit reversed, holding that, although the in-state companies had no property right at stake, the potential for economic harm was a significantly protectable interest.

### b. CERCLA Intervention

MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO INTERVENE
OF CBS CORPORATION AND VERTELLUS SPECIALTIES INC.

Some courts have held that the interest of a non-settling PRP is insufficient to warrant intervention in a suit seeking entry of a consent decree with another PRP. These courts have focused on the speculative and contingent nature of the contribution interest at stake. See, e.g., United States v. Wheeling Disposal Serv. Inc., 1992 WL 685724, 1992 U.S. Dist. LEXIS 22425 (W.D. Mo. 1992) (unpublished); United States v. Vasi, 1991 U.S. Dist. LEXIS 21436 (N.D. Ohio 1991) (unpublished); State of Arizona v. Motorola, 139 F.R.D. 141 (D. Az. 1991)(citing Dilks, 642 F.2d at 1157, as requiring "non-contingent" interest to support intervention as of right); United States v. Browning-Ferris Indus. Chem. Serv., Inc., 19 Chem. Waste Ligit. Rep. 436, (M.D. La. 1989); see also Alcan Aluminum, 25 F.3d 1174. As the Third Circuit, in dicta, discussed:

> Where the proposed intervenor has not yet settled with the government, it is unclear what, if any, liability it will have. Thus, any contribution right it might have depends on the outcome of some future dispute in which the applicant may, or may not, be assigned a portion of liability. In that situation, courts have properly found the interest of non-settlor applicants to be merely contingent.

Alcan Aluminum, 25 F.3d at 1184.

Other courts, however, have concluded that non-settling PRPs facing a loss of their contribution rights do have an interest in

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO INTERVENE
OF CBS CORPORATION AND VERTELLUS SPECIALTIES INC.**

the subject matter of the action. See United States v. Albert Inv.
Co., 585 F.3d 1386 (10th Cir. 2009); Union Elec., 64 F.3d 1152;
United States v. ExxonMobil Corp., 2007 U.S. Dist. LEXIS 95463
(D.N.H. 2007)(unpublished); United States v. City of Glen Cove, 221
F.R.D. 370 (E.D.N.Y. 2004); United States v. Acton Corp., 131
F.R.D. 431 (D.N.J. 1990). As stated by the Tenth Circuit in Albert
Inv.:

> [T]he consent decree directly addresses the
> liability of the settling defendants . . .. If
> the court approves the consent decree, [the
> non-settling PRP] will be barred from seeking
> contribution from any of the settling
> defendants if [the non-settling PRP] is later
> found liable in its own action with the
> government. Therefore, as a practical matter,
> [the non-settling PRP's] interest may be
> impeded by the disposition of the case.

585 F.3d at 1399.

This Court is persuaded by the practical reasoning of those
cases holding that a PRP generally has a significantly protectable
interest when a proposed consent decree would extinguish its
contribution rights. Such a rule is consistent with the Fourth
Circuit's policy of "liberal" intervention generally, and also
reflects the simple truth that the right of contribution held by
CBS and Vertellus, although not certain, is a valuable interest

that each would lose should the Court enter the proposed consent decree without providing them an opportunity to be heard.


### c. Policy and Legislative Intent

Courts denying intervention in this context have relied on the policy and legislative history of CERCLA to conclude that the extinguishment of contribution rights and the threat of disproportionate liability were matters clearly considered and intended by Congress in the Act and, therefore, weigh against granting motions to intervene. E.g., Motorola, 139 F.R.D. at 145 ("The Court does not believe that allowing intervention in this matter would be consistent with CERCLA's joint and several liability scheme and its policy favoring early settlements."). Under Fourth Circuit precedent, however, this Court is foreclosed from looking into such policy matters when analyzing a claim of intervention as a matter of right. In re Sierra Club, 945 F.2d 776, 779 (4th Cir. 1991), the Fourth Circuit held that policy considerations, specifically "concerns of judicial economy and [the] need for guidance," have no place in a Rule 24(a) analysis. While a court should consider these issues when faced with a Rule 24(b) motion for permissive intervention, the court should be

guided solely by the statutory factors when considering a motion to intervene as of right. Id. at 779-80.

The Tenth Circuit recently held that this plain-meaning approach is appropriate in the CERCLA context. "[N]o ambiguity in [42 U.S.C. § 9613] opens the door to legislative history." Albert Inv., 585 F.3d at 1396. Similarly, in Union Elec., the Eighth Circuit, citing Sierra Club, concluded that a district court inappropriately had relied on policy and legislative intent, rather than on the unambiguous and plainly-stated factors of intervention under Fed.R.Civ.P. 24(a)(2) and 42 U.S.C. § 9613(i). 64 F.3d at 1165. The Eighth Circuit noted that, when no ambiguities exist in a statute, policy and legislative intent are irrelevant. Id. The focus must be on the plain language of the statute and "the sole function of the courts is to enforce [the statute] according to its terms." Id. (alterations in original). The only exception is the rare case in which "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." Id. (citations and quotations omitted).

The government argues that this is such a case. It contends that "[w]hen attempting to reconcile [§ 9613(f)(2)] and [§ 9613(f)(1)] in the context of a [§ 9613(i)] intervention motion

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO INTERVENE
OF CBS CORPORATION AND VERTELLUS SPECIALTIES INC.**

with a lodged consent decree, the [Union Elec.] court simply read these subsections literally, failing to note the interaction between them." (Dkt. no. 49-2, pg. 14-15). It also argues that the two competing statutory rights of contribution protection and intervention should cause this Court to focus its analysis on the policy and legislative history of CERCLA to ensure that the application of the statute is consistent with the intention of the drafters.

Despite its force, the government's argument is ill-founded. The congressional purpose of 42 U.S.C. §§ 9613(i), (f)(1) and (f)(2) is plain on its face:

> There is no contradiction among these provisions requiring resort to legislative intent. This court finds that all can be read together and each given its proper effect. Under this reading, the incentive to prompt settlement in [§ 9613(f)(2)] remains intact; it simply is not the sole purpose of [§ 9613] taken as a whole. By its terms, subsection [§ 9613(f)(1)] provides for contribution, subsection [§ 9613(f)(2)] provides for the termination of that interest as to settling PRPs, and subsection [§ 9613(i)] provides for intervention to protect that and other interests of persons affected by the litigation.

Union Elec., 64 F.3d at 1165. Consequently, this Court need not delve into the policy and legislative history of the statute. It is

unambiguous and can be read as a whole without reaching a result at odds with the intention of its drafters.


### (2). Impairment of Ability to Protect Interest

To deny Vertellus and CBS the right to intervene would bar them from arguing against entry of the consent decree, and thus deny them their sole timely opportunity to protect their interests. If the Court ultimately approves the consent decree, these PRPs will be prohibited from seeking contribution from Exxon and each, potentially, would be subject to disproportionate liability.[4] Vertellus and CBS have met their burden of showing that, as a practical matter, the denial of their motions to intervene may impair their ability to protect their interests.


### (3). Interest is not Adequately Represented

Neither the government nor Exxon adequately represents the interests of Vertellus or CBS, who share a common interest in maximizing the amount of money Exxon, the third PRP, ultimately contributes to the cleanup of the BJS site, whether by settlement

---

[4]In this order, the Court makes no judgment on the merits of the consent decree.

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO INTERVENE
OF CBS CORPORATION AND VERTELLUS SPECIALTIES INC.**

or through a contribution action. Clearly, their common interest is directly adverse to that of Exxon. Nor can the government be said to represent adequately the interests of the proposed intervenors; indeed, the EPA has an interest in maximizing its recovery from every PRP. It is clear, therefore, that no current party adequately represents the interest of either Vertellus or CBS.


## (4). <u>Timeliness</u>

"It is generally recognized that, where intervention is sought as a matter of right, courts should be reluctant to dismiss a request for intervention as untimely inasmuch as the proposed intervenor may be seriously harmed if intervention is denied." <u>Local 1829 of the United Mine Workers v. Island Creek Coal Co.</u>, 157 F.R.D. 380, 383 (N.D. W. Va. 1994)(citing 7C Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 1916, at 424 (1986)). In determining timeliness, "[a] reviewing court should look at how far the suit has progressed, the prejudice which delay might cause other parties, and the reason for the tardiness in moving to intervene." <u>Gould v. Alleco, Inc.</u>, 883 F.2d 281, 286 (4th Cir. 1989)(citations omitted). However,

> [t]he most important consideration in deciding
> whether a motion for intervention is untimely
> is whether the delay in moving for

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO INTERVENE
OF CBS CORPORATION AND VERTELLUS SPECIALTIES INC.**

---

> intervention will prejudice the existing
> parties to the case. If prejudice is found,
> the motion will be denied as untimely.

7C Wright, Miller & Kane, <u>Federal Practice & Procedure: Civil</u> §

1916, at 541-49 (3d ed. 2007)(citations omitted). A district court

has wide discretion in determining what is timely. <u>Gould</u>, 883 F.2d

at 286.


### a. <u>Vertellus</u>

Vertellus filed its motion to intervene on July 8, 2009,

before the government moved to enter the consent decree. The

government's memorandum opposing this motion does not challenge

Vertellus's intervention on the basis of timeliness (dkt. no. 49-2,

pg. 8). Therefore, the Court concludes that Vertellus's motion was

timely.


### b. <u>CBS</u>

CBS, by contrast, filed its motion to intervene on

September 8, 2009, after the government moved to enter the consent

decree. Although the government challenges CBS's motion as

untimely, the Court concludes that neither the government nor Exxon

will be prejudiced if CBS is allowed to intervene.

## MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO INTERVENE
## OF CBS CORPORATION AND VERTELLUS SPECIALTIES INC.

First, allowing CBS to intervene will not create significant additional delay in this case. The Court recognizes that, whether it grants one or both of the motions to intervene, the existing parties will incur some additional litigation expenses and the timeline of the litigation may change. However, given that the government does not contest Vertellus's motion on timeliness grounds, its argument that CBS's intervention would cause it prejudice is unpersuasive.

Furthermore, whether it grants intervention or not, this Court ultimately must determine "whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute," United States v. Cannons Engineering Corp., 899 F.2d 79, 84 (1st Cir. 1990), thereby ensuring that the consent decree is fair to the non-settling PRPs. City of Bangor, 532 F.3d at 98 ("[T]he substantive fairness inquiry considers fairness in terms of both larger societal concepts such as corrective justice and fairness to non-settling parties[.]"). The arguments of Vertellus and CBS, therefore, will assist, not hinder, the Court in its obligation to analyze the fairness of the consent decree.

Finally, the government argues that granting CBS's motion to intervene would delay its settlement with Exxon, and the EPA will not be able to recover as quickly funds that it otherwise could use

to clean a portion of the BJS site. It will also then have to spend time and money litigating issues related to CBS's liability. (Dkt. no. 74, pg. 7).

The Court recognizes that the government has a strong interest in ensuring quick cleanups of polluted areas. In this case, however, the government states that it will proceed with its cleanup efforts regardless of whether it has Exxon's settlement funds in hand. This is a cost recovery action, as contrasted with other instances where no remediation can begin until a settlement is reached. Cf. City Of Bangor, 532 F.3d at 96 ("[T]he Consent Decree will result in the cleanup being performed and fully funded by responsible parties.")(emphasis added). Because there has been no showing of prejudice to either Exxon or the government, the Court concludes that CBS's motion to intervene was timely.

### III. Conclusion

For the reasons discussed above, the Court **GRANTS** the motions to intervene of Vertellus (dkt. no. 17) and CBS (dkt. no. 55) for the limited purpose of challenging the proposed consent decree. The Court will address scheduling and case management issues at a conference to be set by separate order.

### MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO INTERVENE OF CBS CORPORATION AND VERTELLUS SPECIALTIES INC.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this order to counsel of record.

Dated: January 15, 2010.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE